*Final Instructions Given*

*Brooke Jackson 7-10-13*

*(given 7-9-13)*

**JURY INSTRUCTION NO. 1**

## Summary of Parties, Claims, and Defenses

I will now explain the claims and defenses of each party to the case and the law governing the case.

This case is about the nightclub and electronic dance music industries. The Plaintiffs are Bouboulina, Inc., which does business under the name "Club Vinyl," and R.M.C. Holdings, L.L.C., which does business under the name "The Church."

The Defendants are Bradley Roulier, an individual, and BMJ&J, LLC, which does business under the name "Beta Nightclub." The Church, Vinyl, and Beta are all nightclubs in Denver that, among other things, feature live performances by DJs playing electronic dance music. Mr. Roulier is a co-founder of Beta Nightclub, and he is also a co-founder of a company called Beatport, LLC, which sells online downloads of electronic dance music.

When I gave you preliminary instructions on the first day of trial, the Plaintiffs were asserting eight separate claims for relief. During the course of trial they have narrowed their claims to four, all of which allege violations of federal antitrust laws. The four remaining claims consist of two alternative "tying" claims; monopolization; and attempt to monopolize. Essentially, Plaintiffs are alleging that Mr. Roulier used his influence or perceived influence with Beatport to cause certain top tier DJs or their agents to favor the Beta Nightclub rather than Plaintiffs' nightclubs when they performed in Denver, and that in doing so Defendants monopolized or attempted to monopolize that the market for such DJ performances in nightclubs in the Denver metropolitan area. Plaintiffs claim that they suffered

1

losses of profits that they probably would have realized from performances by A-list DJs on Thursday or Saturday nights.

The Defendants deny each of these claims. Defendants claim that Regas Christou, who founded and managed the plaintiff nightclubs, was angered by Mr. Roulier's decision to leave his clubs and open a competing nightclub. To the extent that The Church and Club Vinyl did not do as well in attracting A-list DJs on Thursday and Saturday nights thereafter, it was the result of the replacement of Mr. Roulier with less experienced and able talent buyers, competition from a new state of the art nightclub, and a decline in the economy, not any illegal activity. In addition, defendants claim that Plaintiffs succeeded in mitigating their losses by creating a new Latin night and taking other steps that they would not otherwise have taken and that resulted in increased profitability for the Plaintiffs' clubs, not any antitrust injury.

These are the claims that you will decide. In the remaining instructions I will first give you several general instructions, then explain the specific elements of the Plaintiffs' four remaining claims, and finally explain the factors you will consider Plaintiffs' claim for damages in the event that you find that one or more of the four claims has been proven.

2

## JURY INSTRUCTION NO. 2

### Burden of Proof: Preponderance of the Evidence

Plaintiffs have the burden of proving their claims and damages by what is called a preponderance of the evidence. The defendants have asserted as affirmative defenses that the Plaintiffs have failed to mitigate their damages on the nights in question, and that the competitive benefits of their actions outweighed any anti-competitive effect.

Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not. Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element of a claim is evenly balanced, that claim has not been proved by a preponderance of the evidence. Likewise, the Defendants have the burden to prove their affirmative defenses of failure to mitigate damages on the nights in question and competitive benefit by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case, and you should therefore put it out of your mind in considering whether or not a party has met its burden of proof on various issues.

3

**JURY INSTRUCTION NO. 3**

## Evidence in this Case

The evidence in the case consists of the sworn testimony of all the witnesses, all exhibits which have been received in evidence, and all facts which have been admitted or agreed to.

In deciding the facts, you must consider only the evidence received at trial. Evidence offered at the trial and rejected or stricken by the Court must not be considered by you. Statements, remarks, arguments, and objections by the lawyers and remarks of the Court are not evidence.

You are to consider only the evidence in the case and the reasonable inferences from that evidence. Evidence may be either direct or circumstantial. Circumstantial evidence is the proof of facts or circumstances from which the existence or nonexistence of other facts may reasonably be inferred. An inference is a deduction or conclusion that reason and common sense lead the jury to draw from other facts that have been proved. All other evidence is direct evidence. The law makes no distinction between the effect of direct evidence and circumstantial evidence. You must not be influenced by sympathy, bias, or prejudice for or against any party in this case.

The parties have stipulated to the following facts:

(1) Bradley Roulier is a member in and co-founder of BMJ&J, LLC ("Beta Nightclub");

(2) Bradley Roulier is a co-founder of Beatport, LLC, and was a member in that company until 2013;

4

(3)     Mr. Roulier worked as a talent buyer for The Church and Vinyl from 2001 through December 31, 2007, during which time he was able to consistently book performances at The Church and Vinyl by top-tier DJs performing electronic dance music;

(4)     Beta Nightclub opened for business in Lower Downtown Denver on March 7, 2008;

(5)     Beta Nightclub has a smaller capacity than either The Church or Vinyl;

(6)     A single room within Beta Nightclub bears a sign that reads "Beatport Lounge;"

(7)     From 2008 to 2010, total net income at The Church and Vinyl has increased every year;

(8)     Plaintiffs allegations, if true, involve interstate commerce.

**JURY INSTRUCTION NO. 4**

## <u>Depositions as Evidence</u>

Certain testimony has been replayed by video from a deposition. A deposition is testimony taken under oath before the trial and preserved in writing or by video. You are to consider that testimony as if it had been given by the witness from the witness stand.

**JURY INSTRUCTION NO. 5**

## Expert Witnesses

A witness qualified as an expert by education, training, or experience may state opinions. You should judge expert testimony just as you would judge any other testimony. You may accept it or reject it, in whole or in part. You should give the testimony the importance you think it deserves, considering the witness's qualifications, the reasons for the opinions, and all of the other evidence in the case.

**JURY INSTRUCTION NO. 6**

## Determining Credibility of Witnesses

You are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You may believe all, part or none of the testimony of a witness.

**JURY INSTRUCTION NO. 7**

### <u>Highlighted and Demonstrative Exhibits</u>

The lawyers have highlighted certain parts of some exhibits. However, it is for you to determine the significance of the highlighted parts.

The charts or summaries prepared by the Plaintiffs and Defendants have been received for the limited purpose of helping the jury evaluate facts disclosed by testimony, books, records and other documents that are evidence in the case. These charts and summaries are not in and of themselves evidence or proof of any facts. If such charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them. In other words, such facts or summaries are used only as a matter of convenience. So, if and to the extent that you find they are not, in truth, summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

9

**JURY INSTRUCTION NO. 8**

## No Speculation

Any finding of fact you make must be based on probabilities, not possibilities.

You should not guess or speculate about a fact.

**JURY INSTRUCTION NO. 9**

## <u>Spoliation of Evidence</u>

Defendants had a legal obligation in this case to preserve potentially relevant evidence including text messages on Mr. Roulier's cellular telephone. Plaintiffs reminded them of this obligation by sending a "litigation hold letter." However, Defendants did not preserve these text messages. Therefore, Mr. Roulier caused the loss of potentially relevant evidence when he lost his telephone. The court does not know what relevance, if any, was in those text messages. However, the court has granted permission to the Plaintiffs to argue that you should infer that Mr. Roulier's text messages contained evidence that would have supported Plaintiffs' claims in this case. You are not required to draw that inference. You may make whatever inferences you find appropriate concerning the text messages lost by Mr. Roulier.

**JURY INSTRUCTION NO. 10**

### <u>Acts of Officers and Employees</u>

Plaintiffs R.M.C. Holdings, L.L.C., d/b/a The Church; Bouboulina, Inc, d/b/a Vinyl; and Defendant BMJ&J, LLC, d/b/a Beta Nightclub and Beatport Lounge are limited liability companies and can act only through their members, officers and employees. Any act or omission of a member, officer or employee while acting within the scope of his or her duties is the act or omission of the limited liability company.

**JURY INSTRUCTION NO. 11**

## <u>Sherman Act –Purpose</u>

Plaintiffs' claims assert violations of a federal law called "the Sherman Act." The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest selection for consumers.   It is designed to protect competition, not competitors.

**JURY INSTRUCTION NO. 12**

## <u>Plaintiffs' Theories of Defendants' Violations of the Sherman Act</u>

Plaintiffs allege that Defendants engaged in anticompetitive conduct in violation of both Section 1 and Section 2 of the Sherman Act.

Section 1 of the Sherman Act prohibits contracts, combinations, or conspiracies that unreasonably restrain trade. In this case, Plaintiffs allege that Defendants Mr. Roulier and Beta Nightclub unlawfully conspired with each other and also, whether or not willingly, with certain A-list DJs or their agents to restrain trade by engaging in a so-called "tying" arrangement by which A-List DJs were required to do live performances at Defendants' nightclub in order to get promotion on Beatport's website.

Section 2 of the Sherman Act prohibits illegal monopolization and attempts to monopolize. In this case, Plaintiffs allege that Defendants (1) illegally monopolized the market for live performances by A-list DJs at nightclubs in the Denver area, and (2) attempted to monopolize that market.

Defendants deny these claims.

14

**JURY INSTRUCTION NO. 13**

### Conspiracy

A conspiracy is a kind of "partnership" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons or entities must enter into an agreement that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. The agreement itself may have been entirely unspoken. What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose. It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A conspiracy may be formed without all members coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade. The agreement may be shown if the proof establishes that the members knowingly worked together to accomplish a common purpose. It is not essential that all persons or entities acted

15

exactly alike, nor it is necessary that they all possessed the same motive for entering the agreement.

Direct proof of an agreement may not be available. A conspiracy may be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons or entities, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons or entities were acting independently. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

It is not necessary that the evidence show that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons or entities alleged to be members of the conspiracy actually were members. What the evidence must show is that the alleged conspiracy of two or more persons or entities existed, that one or more of the means or methods alleged was used to carry out its purpose, and that Defendant(s) knowingly became a member of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you first should determine whether or not the alleged conspiracy existed. If you conclude that the

16

conspiracy did exist, you should next determine whether the each Defendant knowingly became a member of that conspiracy with the intent to further its purposes.

Liability for conspiracy may be imposed upon a defendant for the fault of all other co-conspirators. It is not necessary for a plaintiff to join as defendants in this case all persons or entities who may have participated with any of the defendants in the alleged conspiracy. A person injured by such a combination may recover against one or all of those participating, and he may enforce his right of recovery against one, or some, or all, at his election.

A company cannot conspire with its own employee, owner, or officer unless that employee, owner, or officer has an independent personal stake in the company and could stand to benefit personally from the conspiracy. In this case, if you find that Defendant Bradley Roulier not only was a part owner in BMJ&J, LLC ("Beta Nightclub") but also that he acted beyond the scope of his authority or for his own benefit, then you may find that Mr. Roulier conspired with Beta Nightclub.

17

**JURY INSTRUCTION NO. 14**

## Definition of Tying

Plaintiffs' first and second remaining claims are based on alleged tying arrangements. A tying arrangement is one in which the seller will provide one product or service (referred to as the tying product) only on the condition that the buyer also buy or sell a different product or service (referred to as the tied product).

In this case, Plaintiffs argue that digital downloads of high-fidelity, DRM-free electronic dance music constitute the tying product, and that the requirement that A-list DJs sell their services, *i.e.*, live performances, only at Beta Nightclub is the tied product.

Not all tying arrangements are unlawful. The essential characteristic of an unlawful tying arrangement is a seller uses its market power over the tying product to force someone to buy or sell a tied product or service that they either did not want to buy or wanted to buy or sell elsewhere.

18

**JURY INSTRUCTION NO. 15**

## Proof of Relevant Market

In order to prove their tying claim (and, as I will mention again when I get to the instructions on monopolization and attempted monopolization, those claims as well) Plaintiffs must prove what is known as a "relevant market." There are two aspects to a relevant market. The first aspect is known as a relevant product market. The second aspect is known as the relevant geographic market. It is Plaintiffs' burden to prove the existence of both a relevant product market and a relevant geographic market for each of their antitrust claims.

**Relevant Product Market**

The basic idea of a relevant product market is that it includes all products that are reasonable substitutes for each other from a buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but permanent increase in price is approximately a five percent increase in price not due to external cost factors. If you find that such switching would occur, then you should conclude that the products are in the same product market.

19

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either industry or the public as to whether the products are in separate markets; (5) the views of Plaintiffs and Defendants regarding who their respective competitors are; and, (6) the existence or absence of different customer groups or distribution channels.

**Relevant Geographic Market**

For each relevant product market there must also be a relevant geographic market. The relevant geographic market for a given relevant product market is the area in which the defendant faces competition from other firms and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller. The relevant geographic market for one relevant product market may be larger or smaller than that for a different relevant product market.

**JURY INSTRUCTION NO. 16**

### Elements of Unlawful Tying – Per Se

There are two kinds of unlawful tying claims, and that is why plaintiffs have two different tying claims. One is called a _per se_ unlawful tying claim and the other is called a <u>rule</u> of <u>reason</u> tying claim. The two claims are similar, but under the law they have slightly different elements which I will explain in this and the next instructions.

Plaintiffs claim that Defendants engaged in a _per se_ unlawful tying arrangement by conditioning A-list DJs' access to and promotion by Beatport on those DJs performing at Beta nightclub instead of Plaintiffs' clubs. In that alleged tying arrangement, Plaintiffs claim digital downloads of high-fidelity, DRM-free electronic dance music constitute the tying product or service, and live performances by A-list DJs at Defendant Beta Nightclub constitute the tied product or service. To establish their claim for tying _per se_, Plaintiffs must prove the relevant tying and tied markets, which I will define in a specific instruction. They then must prove each of the following elements by a preponderance of the evidence:

**1.** Digital downloads of high-fidelity, DRM-free electronic dance music and live performances by A-list DJs in nightclubs are separate and distinct products or services;

**2.** That defendants conditioned A-list DJs' access to and promotion by Beatport within the market for digital downloads of high-fidelity, DRM-free electronic dance music on those A-list DJs performing only at Defendant Beta Nightclub, and not at The Church or Vinyl;

21

**3.** Beatport has market power (which I will define in a specific instruction) in the market for digital downloads of high-fidelity, DRM-free electronic dance music; to allow it to restrain competition in the market for live performances by A-list DJs at nightclubs In the Denver Metro Area.

**4.** The alleged tying arrangement has foreclosed a substantial volume of commerce in the relevant market for live performances by A-list DJ at nightclubs in the Denver metro area.  It is not substantial foreclosure if only a small percentage of sales were affected by the alleged tying arrangement.

**5.** Defendants had a financial interest in the relevant market for live performances by A-list DJs at nightclubs in the Denver metro area.

**6.** Plaintiffs were injured in their business or property because of the tying arrangement.

**JURY INSTRUCTION NO. 17**

## <u>Elements of Unlawful Tying - Rule of Reason Tying</u>

Alternatively, if you find that Plaintiffs proved the relevant market, and that they have proved all of the elements of *per se* tying <u>except</u> that Beatport had market power in the tying market (element number 3 of Instruction Number 16), then Plaintiffs can prevail on their tying claim under the Rule of Reason if they prove that the tying arrangement has "unreasonably restrained" trade in the tied market for live performances by A-list DJs in Denver area nightclubs.

Plaintiffs can prove this by showing there was substantial harm to competition in that market. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Plaintiffs is not sufficient, by itself, to demonstrate harm to competition generally. In determining whether the challenged restraint has produced or is likely to produce competitive harm, you may look at the following factors: the effect of the restraint on prices, output, product quality and service; the purpose and nature of the restraint; the nature and structure of the relevant market, both before and after the restraint was imposed; the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and whether the Defendant(s) possesses "market power."

**JURY INSTRUCTION NO. 18**

### <u>Affirmative Defense - Rule of Reason - Evidence of Competitive Benefits</u>

Defendants may defend against Plaintiffs' Rule of Reason tying claim by demonstrating that the restraint was reasonably necessary to achieve competitive benefits. If you find that Plaintiffs have proved that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways. If you find that Defendants have proven that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then those benefits cannot be used to justify the restraint.

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint. If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.

**JURY INSTRUCTION NO. 19**

### Existence of Market Power in Tying Product Market

Beatport has "market power" if it has sufficient economic power in the relevant tying market to produce an appreciable restraint in the relevant tied market. If you find Beatport's share of the relevant tying market to be above 50%, you may consider that in determining whether Beatport has market power. If you find that Beatport offers a unique product that competitors are unable to provide, you may consider that in determining whether Beatport has market power. Other factors that you may consider in determining whether the Defendants have market power include: the testimony of individuals regarding the nature of the relevant market; the number of participants in the relevant market; whether Defendants or their alleged co-conspirators have control over relevant input markets; and the possible barriers to entry in the relevant market. If Beatport does not possess a substantial market share, it is less likely it possesses market power, and it is less likely that the challenged restraint has resulted or will result in a substantial harmful effect on competition in the tied market.

Plaintiffs' *per se* tying claim is that Beatport had market power and that Defendants used Beatport's market power to persuade A-list DJs or their agents to play at Beta Nightclub and not at the SoCo nightclubs.

25

**JURY INSTRUCTION NO. 20**

### Monopolization - Elements

Plaintiffs' third claim is monopolization. Plaintiffs allege that they were injured by the Defendants' unlawful monopolization of the market for live performances by A-list DJs at nightclubs in the Denver metro area. To prevail on this claim, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

1. The alleged market is a relevant antitrust market;

2. Defendants possessed monopoly power in that market;

3. Defendants "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct; and

4. Plaintiffs were injured in their business or property because of the Defendants' anticompetitive conduct.

26

**JURY INSTRUCTION NO. 21**

## Proof of Monopoly Power

If you find that Plaintiffs have proven a relevant market, then you should determine whether the Defendants have monopoly power in that market. Monopoly power is the power to control prices and exclude competition in the relevant antitrust market. More precisely, a company has a monopoly if it can profitably raise prices substantially above the competitive level for a significant period of time.  To prove their monopolization claim, one of the elements Plaintiffs must prove is that the Defendants have monopoly power in a relevant antitrust market as defined above as the relevant product market and the relevant geographic market. However, monopoly power, in and of itself, is not illegal.

**JURY INSTRUCTION NO. 22**

## Indirect Proof of Monopoly Power

Plaintiffs have attempted to use evidence of the structure of the market to show that the Defendants have monopoly power. The evidence presented by the parties includes evidence of the Defendants' market share, alleged barriers to entry, and the number and size of other competitors. If this evidence establishes that the Defendants have the power to control prices and exclude competition in the relevant antitrust market(s), then you may conclude that the Defendants have monopoly power in that market(s). Monopoly power may also be proven by the following factors:

**Market Share**

Based on the evidence that you have heard about the Defendants' market share, you should determine the Defendants' market share as a percentage of total industry sales and other aspects of the relevant market(s). A market share above 50 percent may be sufficient to support an inference that Defendants have monopoly power, but in considering whether Defendants have monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent. A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power, but if supported by other factors you may conclude

that Defendants have monopoly power even if their market share is below 50 percent.

## Market Share Trends

The trend in Defendants' market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where a company has a high market share, while a decreasing market share might show that a company does not have monopoly power.

## Barriers to Entry

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include rules and regulations, cost of entry, controls over necessary inputs, specialized marketing practices, and the reputation of the entities already participating in the market. Evidence of low or no entry barriers may be evidence that the Defendants do not have monopoly power, regardless of the Defendants' market share, because new competitors could enter easily if Defendants attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that Defendants have monopoly power.

## Entry and Exit by Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that Defendants lack monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and

29

profit margins are relatively high, may support an inference that Defendants have monopoly power.

## Number and Size of Competitors

You may consider whether the Defendants' competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the Defendants' ability to price its products or services. If the Defendants' competitors are vigorous or have large or increasing market shares, this may be evidence that the Defendants lack monopoly power. On the other hand, if you determine that the Defendants' competitors are weak or have small or declining market shares, this may support an inference that Defendants have monopoly power.

JURY INSTRUCTION NO. 23

## Willful Acquisition or Maintenance of Monopoly Power

Monopoly power in and of itself is not unlawful. If you find Defendants had monopoly power then Plaintiffs must prove that Defendants willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market(s). Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition or maintenance of monopoly power through anticompetitive acts from the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is lawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

Acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and

that was not taken for legitimate business reasons. You may not find that a company willfully acquired or maintained monopoly power if it has acquired or maintained that power solely through the exercise of superior foresight and skill; or because changes in cost or taste have driven out all but one supplier.

**JURY INSTRUCTION NO. 24**

### Attempt to Monopolize –Elements

Plaintiffs' fourth claim is attempt to monopolize. Plaintiffs allege that they were injured by defendants' unlawful attempt to monopolize the market for live performances by A-list DJs at nightclubs in the Denver metro area. To prevail on their claim of attempted monopolization, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

**1.** Defendants engaged in anticompetitive conduct.

**2.** Defendants had a specific intent to achieve monopoly power in a relevant market;

**3.** There was a dangerous probability that Defendants would achieve their goal of monopoly power in the relevant market; and

**4.** Plaintiffs were injured in their business or property by Defendants' anticompetitive conduct.

**JURY INSTRUCTION NO. 25**

## Attempt to Monopolize – Specific Intent to Monopolize

To prevail on their claim of attempt to monopolize, Plaintiffs must prove that Defendants had a specific intent to monopolize a relevant market. You must decide, as to each Defendant, whether Plaintiffs have proven that the Defendant had specifically intended to monopolize that market. In other words, you must decide if the evidence shows that the Defendant acted with the conscious aim of using anticompetitive conduct to acquire or maintain the power to control prices and exclude competition in the relevant markets.

There are several ways in which Plaintiffs may prove that a Defendant had the specific intent to monopolize. There may be evidence of direct statements of Defendants' intent to obtain a monopoly in the relevant market. You must be careful, however, to distinguish between a Defendant's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a specific intent to monopolize by using anticompetitive conduct.

Even if you decide that the evidence does not prove directly that a Defendant actually intended to obtain a monopoly, specific intent may be inferred from what the Defendant did. For example, if the evidence shows that the natural and probable consequences of a Defendant's conduct in the relevant market was to give the Defendant control over prices and to exclude or destroy competition, and that this was plainly foreseeable by the Defendant, then you may (but are not required to) infer that the Defendant specifically intended to acquire monopoly power.

In determining whether each Defendant had a specific intent to monopolize, you should take into consideration the extent of competition Defendants would face from producers of identical or equivalent goods and whether Defendants had or probably could have acquired sufficient power to control prices in and to exclude competition from the relevant market. If you find that it is unlikely that Defendants could have achieved the power to exclude competition from an appreciable segment of commerce, then you may consider this as circumstantial evidence that none of them had the required specific intent to monopolize.

**JURY INSTRUCTION NO. 26**

## Attempt to Monopolize – Dangerous Probability of Success

To prevail on their claim of attempt to monopolize, Plaintiffs must also prove that there was a dangerous probability that Defendants would succeed in obtaining monopoly power if they continued to engage in the same or similar conduct. A dangerous probability of success does not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that Defendants would ultimately acquire monopoly power. You should consider the following factors:

1. Defendants' market share;

2. Whether the barriers to entry into the market(s) made it difficult for competitors to enter the market(s); and,

3. The likely effect of any anticompetitive conduct on the Defendants' share of the market(s).

**JURY INSTRUCTION NO. 27**

## Damages

If you find that Plaintiffs have proven any one or more of their four claims, then you must determine the amount of damages, if any, that Plaintiffs are entitled to recover. The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust case is to put injured plaintiffs as near as possible in the position in which they would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter defendants from particular conduct in the future or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to Plaintiffs an amount for attorney fees or the costs of maintaining the lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate Plaintiffs for the particular injuries they suffered as a result of the alleged violation of the law.

Plaintiffs are entitled to recover damages if they can establish three elements of injury and causation:

**1.** That Plaintiffs were in fact injured as a result of Defendants' alleged violation of the antitrust laws;

**2.** That Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury; and,

**3.** That Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

A "material cause" means that some damage occurred to Plaintiffs as a result of Defendants' alleged antitrust violations and not some other cause.  Plaintiffs are not required to prove that Defendants' alleged antitrust violation was the sole cause of their injury; nor need Plaintiffs eliminate all other possible causes of injury. However, if you find that Plaintiffs' injury was caused primarily by something other than the alleged antitrust violation, then you must find that Plaintiffs have failed to prove that they are entitled to recover damages from Defendants.

"An injury of the type that the antitrust laws were intended to prevent" means an injury caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers. If Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws. You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against, such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit, and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

If you find that Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct result of the unlawful acts of defendants.  Plaintiffs are not entitled to recover for injuries that resulted from other causes.  Plaintiffs are only entitled to

38

recover damages caused by the antitrust violation, not damages caused by lawful

competition, mismanagement, the recession, or non-violation factors.

**JURY INSTRUCTION NO. 28**

## Amount of Damages

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

However, you are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damage suffered by the Plaintiffs. If Plaintiffs establish with reasonable probability the existence of an injury caused by the Defendants' antitrust violation, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. If you find that Plaintiffs have failed to carry their burden of proving a reasonable basis for determining damages, then your verdict must be for Defendants.

Plaintiffs' claim for damages is based on a claim for lost profits. Plaintiffs claim that, had it not been for Defendants' conduct, Plaintiffs would have earned additional profits from 2008 through present. If you find that Plaintiffs have

40

reasonably proved the amount of lost profits due to Defendants' conduct, then you

should award these lost profits to Plaintiffs.

**JURY INSTRUCTION NO. 29**

<u>Cause</u>

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have happened.

If more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a cause of the injury. A cause does not have to be the only cause or the last or nearest cause. It is enough if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury.

**JURY INSTRUCTION NO. 30**

## Mitigation

Plaintiffs may not recover damages for any portion of their injury that they could have avoided through the exercise of reasonable care and prudence. Plaintiffs are not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If Plaintiffs failed to take reasonable steps available to them, and the failure to take those steps results in greater harm to Plaintiffs than they would have suffered had they taken those steps, Plaintiffs may not recover any damages for that part of the injury it could have avoided.

Defendants have the burden of proof on this issue. Defendants must prove by a preponderance of the evidence that Plaintiffs acted unreasonably in failing to take specific steps to minimize or limit their losses, that the failure to take those specific steps resulted in their losses being greater than they would have been if they had taken such steps, and the amount by which Plaintiffs' loss would have been reduced had Plaintiffs taken those steps.

In determining whether Plaintiffs failed to take reasonable measures to limit its damages, you must remember that the law does not require Plaintiffs to have taken every conceivable step that might have reduced its damages. The evidence must show that Plaintiffs failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in Plaintiffs' position would likely have adopted, given the circumstances as they appeared at that time. Plaintiffs should be given wide latitude

43

in deciding how to handle the situation, so long as what Plaintiffs did was not unreasonable in light of the existing circumstances.

If you find that Plaintiffs did not take commercially reasonable steps to lessen their damages, then you must determine the amount of damages caused by the Plaintiffs' failure to take such reasonable steps. This amount must not be included in your award of damages.

**JURY INSTRUCTION NO. 31**

### Settlement With Other Defendants

Plaintiffs originally brought this suit against Beatport, LLC and AM Only, Inc.,

in addition to Defendants Bradley Roulier and BMJ&J, LLC ("Beta Nightclub").

Plaintiffs' claims against Beatport, LLC and AM Only, Inc. have been resolved, and

this should not be considered by you in your calculation of damages, if any, in this

matter. The Court will make any appropriate adjustments.

**JURY INSTRUCTION NO. 32**

## <u>Summary Closing Instruction</u>

These instructions contain the law that you must use in deciding this case. No single instruction states all the applicable law. All the instructions must be read and considered together.

You must not be concerned with the wisdom of any rule of law. Regardless of any opinion you may have as to what the law should be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court.

The Court does not, by these instructions, express any opinions as to what has or has not been proved in the case, or to what are or are not the facts of the case.

46